**Evelyn Packard, Plaintiff-Appellee, v. Leslie Kennedy and Eva Kennedy, Defendants-Appellants.**

Gen. No. 10,775.

Second District.

January 24, 1955.

Rehearing denied February 25, 1955.

Released for publication February 28, 1955.

177

B. S. Quigley, and William P. Nolan, of Chicago, and Fred B. Meyer, of Waukegan, for appellants.

Joseph Barbera, and Samuel L. Bullas, both of Chicago, for appellee.

PER CURIAM:

This is an appeal by defendants, Leslie Kennedy and Eva Kennedy, from a judgment of the circuit court of Lake county, entered on a jury verdict awarding damages to plaintiff, Evelyn Packard, for personal injuries sustained on defendants' premises.

The issues presented herein are essentially whether plaintiff was guilty of contributory negligence as a matter of law, and whether the jury's finding on the special interrogatory was inconsistent with the general verdict and warranted its being set aside under the terms of the Civil Practice Act.

From the record it appears that plaintiff was employed by defendants in their home in Lake Forest, Illinois, as a private nurse on night duty attending the mother of defendant Eva Kennedy. Inasmuch as the physical features of the premises are significant in evaluating the conduct of the parties, we shall review those factors.

Defendants' home is set back some 50 feet from the street, and the only access from the street is a 6 to 8 foot wide driveway which extends in a north-south direction along the left border of the lot. A flagstone walk extends from the driveway to the front porch. The driveway widens at the rear of the lot, and turns to the right where it gives access to a 2-car garage. The double door of the garage is on its east wall, and on the north wall—the one nearest the house—there is a door which leads onto a flagstone walk that extends approximately 39 feet to the basement entrance. Directly above the basement door, and on the first floor level, is another door, which leads into the rear hall of the house. Just outside this door, and above the basement door is a concrete platform surrounded by an iron railing.

180

On the six nights preceding July 30, 1951, plaintiff's husband drove her to defendants' home, let her off at the flagstone walk that led to the front door, and then drove off. On the night of July 30, 1951, plaintiff drove herself to defendants' premises, and rode up the driveway to the rear area in front of the garage. As she opened the door to get out of the car, the automatic light in the car flashed on, and she saw the path leading from the garage door. When she closed the car door, however, she was in darkness, except for some light coming from the upper portion of the rear hall door. She proceeded to walk ahead on the flagstone path that led to the house until she came to the concrete slab that surrounds the basement entrance. She stepped upon it, and started to take the next step up, but fell into space to the bottom of the basement steps. When the maid found her, plaintiff explained, "I thought that was the kitchen door."

Defendant Eva Kennedy admitted that she knew that plaintiff came by automobile, but expected her to come the front way, which was lighted, and that if she knew plaintiff were coming in the back way she would have put on the kitchen door light, and would have been careful to warn her. That light, if lit, would have illuminated the area around the basement steps. Plaintiff however, testified to a conversation which occurred in the dining room that morning at the end of plaintiff's night duty, in which defendant Eva Kennedy asked plaintiff to return that night. When plaintiff explained that she would have to drive herself, Mrs. Kennedy told her to park the car in the rear and then use the back entrance.

Defendants denied the conversation, and defendants' maid, who served breakfast that morning, testified that she did not see Mrs. Kennedy in the dining room that morning. Defendant also offered the testimony of a reporter who made notes of a conversation between plaintiff and a representative of the defendants, while

181

plaintiff was in the hospital and under heavy opiates, in which conversation plaintiff stated that she had never been told where to park her car, nor which door to enter. Plaintiff denied ever making any such statement.

Defendants' motions for directed verdict were denied, but the court gave the jury 2 interrogatories defendants tendered. The jury gave an affirmative answer to defendants' interrogatory as to whether plaintiff used due care; and a negative answer to the interrogatory, "Do you believe from the evidence that plaintiff was invited to use the rear entrance on the occasion in question?" Plaintiff objected to that interrogatory, and moved to strike it and the answer on the ground that it did not refer to an ultimate issue, and that it was contrary to the law and the evidence. Defendants, in turn, moved for judgment notwithstanding the verdict, in accordance with the special finding of the jury, and the court, in a written opinion, ordered that the special interrogatory be stricken, and overruled defendants' motions and rendered judgment on the general verdict.

Defendants argue first that plaintiff is precluded from recovering damages on the ground that she was guilty of contributory negligence as a matter of law in walking ahead in the darkness from the garage to the house in unfamiliar surroundings, instead of going in the front entrance.

The issue of contributory negligence is preeminently one for the consideration of a jury, and the issue is a question of law only when the undisputed evidence is so conclusive that the accident resulted from the negligence of the party injured, and could have been avoided by the use of reasonable precaution. However, where reasonable men, acting within the limits prescribed by law, might reach different conclusions, or different inferences could reasonably be drawn from the facts, the question of contributory negligence

182

is for the jury. (Mueller v. Phelps, 252 Ill. 630; Blumb v. Getz, 366 Ill. 273.)

The fact that the plaintiff proceeded in a dark, unfamiliar area does not per se render her conduct negligent as a matter of law, as defendants contend. Thus, in Pauckner v. Wakem, 231 Ill. 276, where the plaintiff, en route to the bathroom in an unfamiliar warehouse, proceeded down a dark hallway and fell into an open elevator shaft, the court rejected the argument that plaintiff was guilty of contributory negligence as a matter of law and stated (p. 282): "If it was too dark for him to see, they (counsel) say he should not have gone along a dark and unknown passway without a light. We are of the opinion that under the evidence it was a proper question for the jury to determine whether appellee was guilty of contributory negligence."

Similarly, in Murphy v. Illinois State Trust Co., 375 Ill. 310, the court held the issue of contributory negligence to be a jury question where plaintiff left a tavern by the rear door, and then instead of turning east toward the end of the porch that led to the sidewalk that ran around the building, plaintiff turned west to the unlighted end of the porch, which led to a vacant lot, and fell into an open cellarway. The case is comparable to the case at bar, since the plaintiff chose a different and noncustomary mode of departure in a dark unlighted area.

In Coken v. Peterson, 340 Ill. App. 518, where a tavern patron walked through the double doors into a dark area where she could not see ahead, in search of a restroom, and fell down the basement steps in attempting to find the lights, the court held that the issue of her contributory negligence in proceeding in that dark area was for the jury to determine.

However, in support of their contention that plaintiff was guilty of contributory negligence as a matter of law, defendants cite numerous authorities, the most relevant of which are Brett v. Century Petroleums,

183

Inc., 302 Ill. App. 99, Hart v. Sullivan, 324 Ill. App. 243, and Wesbrock v. Colby, Inc., 315 Ill. App. 494. In the Brett case, while plaintiff's car was being repaired in the front part of a filling station, she went to a washroom and then walked through a doorway into an utterly dark grease-pit room, where she fell into an excavation. The court held that plaintiff was guilty of contributory negligence as a matter of law, since she should have known that her car was not being repaired in that dark room, and, therefore, was in an area where she had no right to be. That case is distinguishable from the case at bar since plaintiff herein was neither on a private mission, nor in a portion of the premises where she had no right to be, since she was endeavoring to report for duty after parking her car in a proper place. In Hart v. Sullivan the deceased proceeded up a dark stairway in defendant's building while helping someone find a tenant, and, upon opening a door at one of the landings, fell into a stairwell. The court, in holding such conduct to be contributory negligence emphasized that the deceased had proceeded without any urgent necessity to do so. In the instant case, however, plaintiff was required to enter the house in connection with her work.

In Wesbrock v. Colby, Inc. plaintiff went to telephone into a hallway which was so dark that she could not see the dial, and then after returning to the lighted store with the phone book, she went back into the dark area where she was injured. The court held that her conduct constituted contributory negligence. In the instant case plaintiff did not return to the dark area after having reached a place of safety.

In all of these cases cited by defendants there was no necessity for the plaintiff to be in the dark area, which was completely unconnected with the plaintiff's business on the premises, in contrast to the case at bar. Plaintiff herein was reporting for duty as a night nurse, and since she was to remain on duty through the night

it was reasonable to drive her car up the driveway to the garage area where it would not block the passageway, and could be turned around. Nor was this course unreasonable merely because on the preceding nights when her husband drove her to the premises she was let out at the flagstone walk which led to the front door. It would not have been more reasonable to have parked her car in the passageway near the front of the house, or on the public road, particularly since she had no way of knowing of any hazardous condition at the rear of the house. Once in the garage area, it cannot be found that it would have been more reasonable to have proceeded in the dark all the way around to the front of the house than to have walked ahead, as plaintiff did, along the flagstone path toward what appeared to be the rear entrance, from which there was some illumination from the upper part of the door. Nor should plaintiff be penalized for her courage in not calling out and alarming the household where there was a sick person. Furthermore, if plaintiff's testimony relating to the instructions given her by defendant Eva Kennedy is given credence, plaintiff's conduct appears to be even more reasonable and proper.

 It is therefore evident that this is not a case where, as defendants suggest, plaintiff had two choices, one dangerous and one safe, and deliberately chose the perilous course, for although reasonable men might differ as to the wisdom of plaintiff's choice, clearly her conduct was not of such a nature that all reasonable men would agree that she was palpably negligent, and therefore, that issue was properly submitted to the jury.

We shall consider next defendants' further contention that the jury's negative answer to the interrogatory, "Do you believe from the evidence that plaintiff was invited to use the rear entrance of the house on the occasion in question," warranted that the general verdict for plaintiff be set aside.

Section 65 of the Civil Practice Act (ch. 110, sec. 189, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 104.065]) authorizes the practice of submitting special interrogatories on any material question, and provides that when the special finding of fact is inconsistent with the general verdict the former shall control the latter, and the court may render judgment accordingly. The phrase "material question" has been construed to refer to the "ultimate facts" upon which the rights of the parties depend, and therefore, interrogatories eliciting merely evidential, rather than ultimate, facts have been deemed improper. (Wicks v. Cuneo-Henneberry Co., 319 Ill. 344.) Moreover, courts are reluctant to allow general verdicts to be set aside by special findings, and have held that all reasonable presumptions will be entertained in favor of the general verdict, while nothing will be presumed in aid of the special finding of fact; and that the inconsistency, to be controlling, must be irreconcilable so as to be incapable of being removed by any evidence admissible under the issues. (Wicks v. Cuneo-Henneberry Co., 319 Ill. 344; Devine v. Federal Life Ins. Co., 250 Ill. 203; Weinrob v. Heintz, 346 Ill. App. 30.)

In the instant case, plaintiff contends that, in the light of the conflicting evidence regarding her conversation with defendant Eva Kennedy over the use of the rear entrance, the reasonable interpretation of the interrogatory was that it was designed to elicit the evidential fact of whether defendant expressly invited plaintiff to use the rear entrance. Consequently, plaintiff argues that the interrogatory should not have been given and, also, that the jury's "No" answer is not inconsistent with the general verdict for plaintiff, since, even if she were not expressly invited to use the rear entrance, she had an implied invitation to do so, and defendants' failure to keep that area in a safe condition breached their duty of care to her as a business invitee.

Defendants, however, maintain that the "No" answer to the interrogatory was determinative of the ultimate fact that plaintiff was not an invitee on the premises at the time of the accident, since she had no express invitation to be in the area and had exceeded the bounds of her original invitation. Hence, they insist that they owed her no duty of care, and the general verdict for plaintiff must be set aside.

In determining the merit of these arguments, it is our opinion that the reasonable interpretation of the interrogatory by the jury in the light of the controverted testimony as to whether plaintiff was told to park her car in the rear and use the back door was that the interrogatory related to that express invitation. Defendants' assertion that the interrogatory was broad enough to cover any implied invitation presumed legal insight and knowledge of the concept of "implied invitation" on the part of the jurors. If defendants desire the interrogatory to include the concept of implied invitation, the interrogatory should have been more explicit. Therefore, it is incumbent upon this court to ascertain whether, even if there were no express invitation to use the rear entrance, as found by the jury, the general verdict for plaintiff could be sustained on the theory of implied invitation.

The evidence is undisputed that since plaintiff was employed as a nurse in defendants' household, she was originally an invitee, and the owner owed her the duty to exercise reasonable care to keep in a safe condition all portions of the premises included within the invitation, and which it was necessary or convenient for the invitee to use in the course of the business, and at which the presence of the invitee should reasonably be anticipated, or which the invitee was allowed to go. (Calvert v. Springfield Elec. Light & Power Co., 231 Ill. 290; Pauckner v. Wakem, 231 Ill. 276; 65 C.J.S. 536.)

187

However, where an invitee goes to a portion of the premises to which he is not authorized by the nature of the invitation, he loses his status as an invitee, and becomes a mere licensee, and the owner is not liable for injuries resulting from an unsafe condition of that portion of the premises. (Wesbrock v. Colby, Inc., 315 Ill. App. 494). Courts have recognized the difficulty in determining when an invitee ceases to be such and becomes a licensee, and have stated that the facts in each case must be examined to resolve that issue, which ordinarily is submitted to the jury. (Larson v. Illinois Central R. Co., 2 Ill.App.2d 102; Coken v. Peterson, 340 Ill. App. 518.) It has been held, however, that the owner is under a duty to provide reasonably safe means of ingress and egress for the invitee. (65 C.J.S. 538, 540; Ellguth v. Blackstone Hotel, Inc., 408 Ill. 343), even where the mode chosen is not the customary one, but one which is allowed by the owner (Larson v. Illinois Central R. Co.; Murphy v. Illinois State Trust Co., 375 Ill. 310; 65 C.J.S. 540).

In the Larson case, relied upon by plaintiff, the operative facts are comparable to the case at bar. The plaintiff arrived at the main entrance on the north side of the train depot to purchase a ticket, but instead of entering there, plaintiff walked around the outside of the building to enter on the south side where the trains arrived, and on the way fell off a step in the sidewalk. The court held that since plaintiff went on the premises to purchase a ticket she was an invitee and did not lose that status by her failure to use the regular entrance, hence the railroad owed her a high degree of care to see that the property was kept in a reasonably safe condition.

The court in the Larson case, in analyzing whether the invitee exceeded the scope of the invitation distinguished Briney v. Illinois Central R. Co., 401 Ill. 181, cited by defendants herein, on the ground that plaintiff at the time of the injury was on his own pleasure mis-

sion and was not performing, or even preparing to perform, any duties for defendant, but had merely hopped on a train unbeknown to the train crew. The court in the Larson case cited as authority Coken v. Peterson, 340 Ill. App. 518, where it was held to be an issue for the jury whether a tavern patron ceased to be an invitee when she went through the swinging doors into a dark vestibule in search of a washroom, and fell down the basement steps.

In Murphy v. Illinois State Trust Co., 375 Ill. 310, the court rejected the argument that a tavern patron exceeded the invitation and became a mere licensee when he went out the rear entrance onto an unlighted porch and turned, not to the exit leading to the sidewalk that surrounded the tavern, but to the end which led to an empty lot, and fell into an open cellar.

In determining whether plaintiff herein exceeded the scope of her invitation, in the light of those authorities it is undisputed that she was expected on the premises and was reporting for duty at the time of the accident and was not on a private mission of her own, as was the plaintiff in the Briney case. Inasmuch as she was not restricted to using the front entrance, she was not in an area where she was prohibited from going, nor was she in an area where she had no business to be, as in the Brett case cited by defendants. Since she had driven her car to work and was going to remain on the premises through the night, it was entirely reasonable that she park her car at the rear of the driveway in front of the garage. Moreover, since plaintiff was not a stranger in the household, having worked there for the preceding six days, it was also reasonable that she proceed to the nearest entrance to the house. Under those circumstances, the rear entrance constituted a reasonable approach to the premises and cannot be deemed to be beyond the scope of her invitation. Plaintiff was, therefore, a business invitee, to whom defendants owed a duty to keep the

189

premises in a reasonably safe condition, at the time of the accident. The general verdict in her favor, which was not inconsistent with the special finding of the jury under our interpretation of the cause, could be sustained.

Furthermore, since we have found that the special interrogatory related only to the evidentiary fact of whether a particular conversation took place, rather than to an ultimate fact in the case, it was not proper and could not affect that general verdict. (Stevens v. Kasten, 342 Ill. App. 421, 425.)

Defendants further contend that the court erred in failing to direct a verdict on the ground that there was no evidence of defendants' negligence. They argue that there was no direct testimony that defendants knew that the area was dangerous, and that since plaintiff was not invited to use the area defendants had no duty of previous preparation or warning.

As we have noted, the physical features reveal that the path from the garage area led to the basement stairway, which, in the darkness of night, constituted a pitfall. If the outside light fixture, located between the kitchen door and the basement stairway, had been lit, the basement area would have been illuminated and the hazard obviated. Defendant Eva Kennedy's admission that if she knew plaintiff was coming in the back way she would have had the light on, and would have been careful to warn her, reveals that defendant regarded this condition as hazardous to persons not familiar with the construction.

Defendants, however, claim that they could not foresee any hazard to plaintiff, since they did not anticipate that she would use that entrance. On a motion for directed verdict only the evidence favorable to plaintiff may be considered, and since plaintiff testified to a conversation with Eva Kennedy, in which plaintiff was directed to park her car in the rear area and come in the back entrance, there was evidence that

190

defendants should have foreseen the hazard to plaintiff. Moreover, even without that evidence, defendants might reasonably have foreseen plaintiff's presence in the area and the hazard to her, since they knew she was coming to spend the night, that she was not limited to any particular entrance, that she would be driving, and that the side driveway which leads to the garage at the rear of the property is used by persons with cars who are invited to the premises. Under those circumstances, defendants' failure to keep the rear entry lighted constituted some evidence of negligence which could be considered by the jury.

In our opinion the circuit court did not err in entering judgment on the verdict in favor of plaintiff, and that judgment should be affirmed.

Judgment affirmed.